## NORFOLK & WESTERN RAILWAY CO. *v.* LIEPELT, ADMINISTRATRIX

No. 78–1323.   Argued November 5, 1979—Decided February 19, 1980

STEVENS, J., delivered the opinion of the Court, in which BURGER, C. J., and BRENNAN, STEWART, WHITE, POWELL, and REHNQUIST, JJ., joined. BLACKMUN, J., filed a dissenting opinion, in which MARSHALL, J., joined, *post,* p. 498.

*Howard J. Trienens* argued the cause for petitioner. With him on the briefs were *Robert L. Landess* and *Tobin M. Richter.*

*Richard S. Fleisher* argued the cause for respondent. With him on the brief was *Sidney Z. Karasik.**

MR. JUSTICE STEVENS delivered the opinion of the Court.

In cases arising under the Federal Employers' Liability Act,[1] most trial judges refuse to allow the jury to receive evidence

---

*\*Francis D. Morrissey, Gus A. Svolos, Patrick F. Healy, Jr.,* and *John T. Rank* filed a brief for the National Association of Railroad Trial Counsel as *amicus curiae* urging reversal.

*Edward J. Kionka* and *Sheldon S. Cohen* filed a brief for the Association of Trial Lawyers of America as *amicus curiae* urging affirmance.

*Edward I. Pollock* and *Leonard Sacks* filed a brief for the Alabama Trial Lawyers Association et al. as *amici curiae.*

[1] 35 Stat. 65, as amended, 45 U. S. C. § 51 *et seq.*

or instruction concerning the impact of federal income taxes on the amount of damages to be awarded. Because the prevailing practice developed at a time when federal taxes were relatively insignificant, and because some courts are now following a different practice, we decided to answer the two questions presented by the certiorari petition in this wrongful-death action: (1) whether it was error to exclude evidence of the income taxes payable on the decedent's past and estimated future earnings; and (2) whether it was error for the trial judge to refuse to instruct the jury that the award of damages would not be subject to income taxation.

In 1973, a fireman employed by petitioner suffered fatal injuries in a collision caused by petitioner's negligence.[2] Respondent, as administratrix of the fireman's estate, brought suit under the FELA to recover the damages that his survivors suffered as a result of his death. In 1976, after a full trial in the Circuit Court of Cook County, the jury awarded respondent $775,000. On appeal, the Appellate Court of Illinois held that it was "not error to refuse to instruct a jury as to the nontaxability of an award" and also that it was "not error to exclude evidence of the effect of income taxes on future earnings of the decedent." 62 Ill. App. 3d 653, 669, 378 N. E. 2d 1232, 1245 (1978). The Illinois Supreme Court denied leave to appeal.[3]

The evidence supporting the damages award included biographical data about the decedent and his family and the expert testimony of an economist. The decedent, a 37-year-old man, was living with his second wife and two young children and was contributing to the support of two older children by his first marriage. His gross earnings in the 11 months prior to his death on November 22, 1973, amounted to $11,988.

---

[2] The issue of liability was vigorously contested at the trial and was the subject of extensive consideration by the Appellate Court of Illinois, First District. See 62 Ill. App. 3d 653, 378 N. E. 2d 1232 (1978). No aspect of that issue, however, is now before us.

[3] App. to Pet. for Cert. A27–A28.

Assuming continued employment, those earnings would have amounted to $16,828.26 in 1977.

The expert estimated that the decedent's earnings would have increased at a rate of approximately five percent per year, which would have amounted to $51,600 in the year 2000, the year of his expected retirement. The gross amount of those earnings, plus the value of the services he would have performed for his family, less the amounts the decedent would have spent upon himself, produced a total which, when discounted to present value at the time of trial, amounted to $302,000.

Petitioner objected to the use of gross earnings, without any deduction for income taxes, in respondent's expert's testimony and offered to prove through the testimony of its own expert, an actuary, that decedent's federal income taxes during the years 1973 through 2000 would have amounted to about $57,000. Taking that figure into account, and making different assumptions about the rate of future increases in salary and the calculation of the present value of future earnings, petitioner's expert computed the net pecuniary loss at $138,327. As already noted, the jury returned a verdict of $775,000.

Petitioner argues that the jury must have assumed that its award was subject to federal income taxation; otherwise, it is argued, the verdict would not have exceeded respondent's expert's opinion by such a large amount.[4] For that reason, petitioner contends that it was prejudiced by the trial judge's refusal to instruct the jury that "your award will not be subject to any income taxes, and you should not consider such taxes in fixing the amount of your award."

Whether it was error to refuse that instruction, as well as the question whether evidence concerning the federal taxes on

---

[4] Respondent argues that the excess is adequately explained by the jury's estimate of the pecuniary value of the guidance, instruction, and training that the decedent would have provided to his children.

the decedent's earnings was properly excluded, is a matter governed by federal law. It has long been settled that questions concerning the measure of damages in an FELA action are federal in character. See, e. g., *Michigan Central R. Co.* v. *Vreeland*, 227 U. S. 59. This is true even if the action is brought in state court. See, e. g., *Chesapeake & Ohio R. Co.* v. *Kelly*, 241 U. S. 485, 491.[5] In this case the Appellate Court of Illinois recognized that the practice then being followed in Illinois was subject to change when this Court addresses the issue.[6] We do so now, first considering the evidence question and then the proposed instruction.

## I

In a wrongful-death action under the FELA, the measure of recovery is "the damages . . . [that] flow from the deprivation of the pecuniary benefits which the beneficiaries might have reasonably received. . . ." *Michigan Central R. Co.* v. *Vreeland, supra,* at 70. The amount of money that a wage earner is able to contribute to the support of his family is unquestionably affected by the amount of the tax he must pay to the Federal Government. It is his after-tax income, rather than his gross income before taxes, that provides the only realistic measure of his ability to support his family. It fol-

---

[5] One of the purposes of the Federal Employers' Liability Act was to "create uniformity throughout the Union" with respect to railroads' financial responsibility for injuries to their employees. H. R. Rep. No. 1386, 60th Cong., 1st Sess., 3 (1908). See also *Dice* v. *Akron, C. & Y. R. Co.,* 342 U. S. 359, 362; *Brady* v. *Southern R. Co.,* 320 U. S. 476, 479; Hill, Substance and Procedure in State FELA Actions—The Converse of the Erie Problem?, 17 Ohio St. L. J. 384 (1956).

[6] "The Supreme Court of the United States has not spoken on this issue. Absent an authoritative pronouncement by that court we will follow the decisions of our own supreme court in *Raines* v. *New York Central R. R. Co.* (1972), 51 Ill. 2d 428, 430, 283 N. E. 2d 230, *cert. denied* (1972), 409 U. S. 983, . . . and *Hall* v. *Chicago & North Western Ry. Co.* (1955), 5 Ill. 2d 135, 149–52, 125 N. E. 2d 77. . . ." 62 Ill. App. 3d, at 668–669, 378 N. E. 2d, at 1245.

lows inexorably that the wage earner's income tax is a relevant factor in calculating the monetary loss suffered by his dependents when he dies.

Although federal courts have consistently received evidence of the amount of the decedent's personal expenditures, see, e. g., *Kansas City S. R. Co.* v. *Leslie,* 238 U. S. 599, 604, and have required that the estimate of future earnings be reduced by "taking account of the earning power of the money that is presently to be awarded," *Chesapeake & Ohio R. Co.* v. *Kelly, supra,* at 489, they have generally not considered the payment of income taxes as tantamount to a personal expenditure and have regarded the future prediction of tax consequences as too speculative and complex for a jury's deliberations. See, e. g., *Johnson* v. *Penrod Drilling Co.,* 510 F. 2d 234, 236–237 (CA5 1975), cert. denied, 423 U. S. 839.

Admittedly there are many variables that may affect the amount of a wage earner's future income-tax liability. The law may change, his family may increase or decrease in size, his spouse's earnings may affect his tax bracket, and extra income or unforeseen deductions may become available. But future employment itself, future health, future personal expenditures, future interest rates, and future inflation are also matters of estimate and prediction. Any one of these issues might provide the basis for protracted expert testimony and debate. But the practical wisdom of the trial bar and the trial bench has developed effective methods of presenting the essential elements of an expert calculation in a form that is understandable by juries that are increasingly familiar with the complexities of modern life. We therefore reject the notion that the introduction of evidence describing a decedent's estimated after-tax earnings is too speculative or complex for a jury.[7]

---

[7] This is not to say, however, that introduction of such evidence must be permitted in every case. If the impact of future income tax in calculating

Respondent argues that if this door is opened, other equally relevant evidence must also be received. For example, she points out that in discounting the estimate of future earnings to its present value, the tax on the income to be earned by the damages award is now omitted.[8] Logically, it would certainly seem correct that this amount, like future wages, should be estimated on an after-tax basis. But the fact that such an after-tax estimate, if offered in proper form, would also be admissible does not persuade us that it is wrong to use after-tax figures instead of gross earnings in projecting what the decedent's financial contributions to his survivors would have been had this tragic accident not occurred.

Respondent also argues that evidence concerning costs of litigation, including her attorney's fees, is equally pertinent to a determination of what amount will actually compensate the survivors for their monetary loss. In a sense this is, of course, true. But the argument that attorney's fees must be added to a plaintiff's recovery if the award is truly to make him whole is contrary to the generally applicable "American Rule." See *Alyeska Pipeline Service Co.* v. *Wilderness Society,* 421 U. S. 240, 247. The FELA, however, unlike a number of other federal statutes,[9] does not authorize recovery of attorney's fees by the successful litigant. Only if the Congress were to provide for such a recovery would it be proper to consider them. In any event, it surely is not proper for the Judiciary to ignore the demonstrably relevant factor of income tax in measuring damages in order to offset

---

the award would be *de minimis,* introduction of the evidence may cause more confusion than it is worth. Cf. Fed. Rule Evid. 403.

[8] See *McWeeney* v. *New York, N. H. & H. R. Co.,* 282 F. 2d 34, 37 (CA2 1960), cert. denied, 364 U. S. 870.

[9] See Civil Rights Act of 1964, Tit. VII, § 706 (k), 78 Stat. 261, 42 U. S. C. § 2000e–5 (k); Clayton Act, § 4, 38 Stat. 731, 15 U. S. C. § 15; and numerous others collected in *Alyeska Pipeline Service Co.* v. *Wilderness Society,* 421 U. S., at 260–261, n. 33.

what may be perceived as an undesirable or unfair rule regarding attorney's fees.[10]

## II

Section 104 (a) (2) of the Internal Revenue Code of 1954, 26 U. S. C. § 104 (a) (2), provides that the amount of any damages received on account of personal injuries is not taxable income.[11]    The section is construed to apply to wrongful-death awards; they are not taxable income to the recipient.[12]

Although the law is perfectly clear, it is entirely possible that the members of the jury may assume that a plaintiff's recovery in a case of this kind will be subject to federal taxation, and that the award should be increased substantially in order to be sure that the injured party is fully compensated. The Missouri Supreme Court expressed the opinion that "it is reasonable to assume the average juror would believe [that its

---

[10] The dissent takes the position that § 104 (a) (2) of the Internal Revenue Code, see nn. 11, 12, *infra*, which makes personal injury awards nontaxable, "appropriates for the tortfeasor a benefit intended to be conferred on the victim or his survivors." *Post,* at 498–499.  But we see nothing in the language and are aware of nothing in the legislative history of § 104 (a) (2) to suggest that it has any impact whatsoever on the proper measure of damages in a wrongful-death action.   Moreover, netting out the taxes that the decedent would have paid does not confer a benefit on the tortfeasor any more than netting out the decedent's personal expenditures.   Both subtractions are required in order to determine "the pecuniary benefits which the beneficiaries might have reasonably received. . . ." *Michigan Central R. Co.* v. *Vreeland,* 227 U. S. 59, 70.

[11] The statute contains an exception for the reimbursement of medical expenses that have been taken as a deduction.   The section provides in relevant part:

"Except in the case of amounts attributable to (and not in excess of) deductions allowed under Section 213 (relating to medical, etc., expenses) for any prior taxable year, gross income does not include—

(2) the amount of any damages received (whether by suit or agreement) on account of personal injuries or sickness. . . ."

[12] See Rev. Rul. 54–19, 1954–1 Cum. Bull. 179.

verdict will] be subject to such taxes." *Dempsey* v. *Thompson,* 363 Mo. 339, 346, 251 S. W. 2d 42, 45 (1952). And Judge Aldisert, writing for the Third Circuit, agreed:

> "We take judicial notice of the 'tax consciousness' of the American public. Yet, we also recognize, as did the court in Dempsey v. Thompson, 363 Mo. 339, 251 S. W. 2d 42 (1952), that few members of the general public are aware of the special statutory exception for personal injury awards contained in the Internal Revenue Code.
>
> " '[T]here is always danger that today's tax-conscious juries may assume (mistakenly of course) that the judgment will be taxable and therefore make their verdict big enough so that plaintiff would get what they think he deserves after the imaginary tax is taken out of it.'
>
> "II Harper & James, The Law of Torts § 25.12, at 1327–28 (1956)." (Footnote omitted.) *Domeracki* v. *Humble Oil & Refining Co.,* 443 F. 2d 1245, 1251 (1971), cert. denied, 404 U. S. 883.

A number of other commentators have also identified that risk.[13]

In this case the respondent's expert witness computed the amount of pecuniary loss at $302,000, plus the value of the care and training that decedent would have provided to his young children; the jury awarded damages of $775,000. It is surely not fanciful to suppose that the jury erroneously believed that a large portion of the award would be payable to the Federal Government in taxes, and that therefore it improperly inflated the recovery. Whether or not this specu-

---

[13] See, *e. g.,* Burns, A Compensation Award for Personal Injury or Wrongful Death Is Tax-Exempt: Should We Tell the Jury?, 14 DePaul L. Rev. 320 (1965); Feldman, Personal Injury Awards: Should Tax-Exempt Status Be Ignored?, 7 Ariz. L. Rev. 272 (1966); Nordstrom, Income Taxes and Personal Injury Awards, 19 Ohio St. L. J. 212 (1958).

lation is accurate, we agree with petitioner that, as Judge Ely wrote for the Ninth Circuit,

> "[t]o put the matter simply, giving the instruction can do no harm, and it can certainly help by preventing the jury from inflating the award and thus overcompensating the plaintiff on the basis of an erroneous assumption that the judgment will be taxable." *Burlington Northern, Inc.* v. *Boxberger,* 529 F. 2d 284, 297 (1975).

We hold that it was error to refuse the requested instruction in this case. That instruction was brief and could be easily understood. It would not complicate the trial by making additional qualifying or supplemental instructions necessary. It would not be prejudicial to either party, but would merely eliminate an area of doubt or speculation that might have an improper impact on the computation of the amount of damages.

The judgment is reversed, and the case is remanded to the Appellate Court of Illinois for further proceedings not inconsistent with this opinion.

*It is so ordered.*

MR. JUSTICE BLACKMUN, with whom MR. JUSTICE MARSHALL joins, dissenting.

In this action for wrongful death arising under the Federal Employers' Liability Act, 35 Stat. 65, as amended, 45 U. S. C. §§ 51–60, the Court today holds that if an award is granted, federal income taxes on the decedent's lost earnings are to be taken into account and are. to reduce the amount of the award. The Court further holds that, on request, the jury must be instructed that the award is not subject to federal income tax.

I agree with neither ruling. In my view, by mandating adjustment of the award by way of reduction for federal income taxes that would have been paid by the decedent on his earnings, the Court appropriates for the tortfeasor a bene-

fit intended to be conferred on the victim or his survivors. And in requiring that the jury be instructed that a wrongful-death award is not subject to federal income tax, the Court opens the door for a variety of admonitions to the jury not to "misbehave," and unnecessarily interjects what is now to be federal law into the administration of a trial in a state court.

In this day of substantial income taxes, one is sorely tempted, in jury litigation, to accept the propriety of admitting evidence as to a tort victim's earnings *net* after estimated income taxes, and of instructing the jury that an award will be tax-free. This, it could be urged, is only common sense and a recognition of financial realities.

Ordinarily, however, the effect of an income tax upon the recipient of a payment is of no real or ultimate concern to the payer. Apart from required withholding, it just is not the payer's responsibility or, indeed, "any of his business." The concept of "net after taxes" and the omnipresence of the tax collector, to be sure, are present facts of life and are within the constant awareness of both recipient and payer. But these factors do not change the basic character of an award for damages, whether that award be one to compensate the surviving victim for his injury, or one to compensate the deceased victim's survivors, by way of statutory wrongful-death benefit, for their loss. The income tax effect should flow and be retained in its own channel. Surely, it should not operate to assist the tortfeasor by way of a benefit, perhaps even a windfall.

I

The employer-petitioner argues, and the Court holds, that federal income taxes that would have been paid by the deceased victim must be subtracted in computing the amount of the wrongful-death award. Were one able to ignore and set aside the uncertainties, estimates, assumptions, and complexities involved in computing and effectuating that subtraction, this might not be an unreasonable legislative proposition

in a compensatory tort system. Neither petitioner nor the Court, however, recognizes that the premise of such an argument is the nontaxability, under the Internal Revenue Code, of the wrongful-death award itself.

By not taxing the award, Congress has bestowed a benefit.[1] Although the parties disagree over the origin of the tax-free status of the wrongful-death award,[2] it is surely clear that the lost earnings could be taxed as income. Cf. *Commissioner* v. *Glenshaw Glass Co.*, 348 U. S. 426, 430–431 (1955). See generally M. Chirelstein, Federal Income Taxation 39–40 (1977). In my view, why Congress created this benefit under one statute is relevant in deciding where the benefit should be allocated under another statute enacted by Congress.[3]

---

[1] The parties agree that these awards are not taxable. Of course, it would not be in the interest of either party to take the position that the award is taxable.

[2] Respondent maintains that a wrongful-death award is within the exclusion of § 104 (a) (2) of the Internal Revenue Code of 1954, 26 U. S. C. § 104 (a) (2), which provides that "gross income does not include . . . the amount of any damages received (whether by suit or agreement) on account of personal injuries or sickness." Brief for Respondent 8–9, and n. 2. Petitioner, on the other hand, contends that a wrongful-death award is not, in the words of the statute, "received . . . on account of personal injuries." Petitioner points to an early ruling that wrongful-death damages are not within the Code's definition of income because they merely replace contributions the decedent's relatives would have received from the decedent. I. T. 2420, VII–2 Cum. Bull. 123 (1928); see Rev. Rul. 54–19, 1954–1 Cum. Bull. 179. Alternatively, petitioner argues that even if wrongful-death damages are covered by § 104 (a) (2), Congress' purpose in enacting that subsection was not to aid tort victims. Rather, § 104 (a) (2) can be traced to Congress' concern in 1918 that personal injury damages were not income within the meaning of the Sixteenth Amendment, citing H. R. Rep. No. 767, 65th Cong., 2d Sess., 9–10 (1918). Brief for Petitioner 31–32, n. 23.

[3] Petitioner argues that a decision in this case that would rest on Congress' purpose not to subject wrongful-death awards to federal income taxation would "fundamentally alter all forms of injury compensation in this country," Reply Brief for Petitioner 10–11, since this nontaxability

While Congress has not articulated its reasons for not taxing a wrongful-death award, it is highly unlikely that it intended to confer this benefit on the tortfeasor. Two more probable purposes for the exclusion are apparent. First, taxing the award could involve the same uncertainties and complexities noted by respondent and the majority of the courts of this country as a reason for not taking income taxes into account in computing the award. Congress may have decided that it is simply not worthwhile to enact a complex and administratively burdensome system in order to approximate the tax treatment of the income if, in fact, it had been earned over a period of time by the decedent. Second, Congress may have intended to confer a humanitarian benefit on the victim or victims of the tort. One District Court has reasoned:

> "The court can divine no societal purpose that would be furthered by awarding wrongdoing defendants with the benefit of this Congressional largesse. A societal purpose would be served by benefiting innocent victims of tortious conduct. Indeed, since the victims' chances of needing public relief are thereby diminished, this concern would be greater, not less, in the case of death, where the loss of earning capacity is total. This court therefore concludes that Congress, as with all exemptions under Section 104, '. . . intended to relieve a taxpayer who has the misfortune to become ill or injured. . . .'" *Huddell* v. *Levin,* 395 F. Supp. 64, 87 (NJ 1975),[4] quoting *Epmeier* v. *United States,* 199 F. 2d 508, 511 (CA7 1952), quoted in turn in *Haynes* v. *United States,* 353 U. S. 81, 84–85, n. 3 (1957).

is not limited to awards under the FELA. My position, however, is merely that the policies embodied in one federal statute are relevant in aid of the interpretation of another federal statute. Absent a more explicit statement of Congress' intent, I would not infer a congressional purpose to override the States' traditional power to define the measure of damages applicable to state-created causes of action.

[4] Vacated on other grounds, 537 F. 2d 726 (CA3 1976).

See also Comment, Income Tax Effects on Personal Injury Recoveries, 30 La. L. Rev. 672, 685 (1970); Note, 69 Harv. L. Rev. 1495, 1496 (1956); Note, Taxation of Damage Recoveries from Litigation, 40 Cornell L. Q. 345, 346 (1955).

Whichever of these concerns it was that motivated Congress, transfer of the tax benefit to the FELA tortfeasor-defendant is inconsistent with that purpose. If Congress felt that it was not worth the effort to estimate the decedent's prospective tax liability on behalf of the public fisc, it is unlikely that it would want to require this effort on behalf of the tortfeasor. And Congress would not confer a humanitarian benefit on tort victims or their survivors in the Internal Revenue Code, only to take it away from victims or their survivors covered by the FELA. I conclude, therefore, that any income tax effect on lost earnings should not be considered in the computation of a damages award under the FELA.

## II

The Court concludes that, as a matter of federal law, the jury in an FELA case must be instructed, on request, that the damages award is not taxable. This instruction is mandated, it is said, because "it is entirely possible that the members of the jury may assume that a plaintiff's recovery . . . will be subject to federal taxation, and that the award should be increased substantially in order to be sure that the injured party is fully compensated." *Ante,* at 496. The Court finds it "surely not fanciful to suppose" that the jury acted on that assumption in this case. *Ante,* at 497.

The required instruction is purely cautionary in nature. It does not affect the determination of liability or the measure of damages. It does nothing more than call a basically irrelevant factor to the jury's attention, and then directs the jury to forget that matter. Even if federal law governed such an admonition to the jury not to misbehave, the instruction required by the Court seems to me to be both unwise

and unjustified, and almost an affront to the practical wisdom of the jury.

It also is "entirely possible" that the jury "may" increase its damages award in the belief that the defendant is insured, or that the plaintiff will be obligated for substantial attorney's fees, or that the award is subject to state (as well as federal) income tax, or on the basis of any number of other extraneous factors. Charging the jury about every conceivable matter as to which it should not misbehave or miscalculate would be burdensome and could be confusing. Yet the Court's decision today opens the door to that possibility. There certainly is no evidence in this record to indicate that the jury is any more likely to act upon an erroneous assumption about an award's being subject to federal income tax than about any other collateral matter. Although the Court suggests that the difference in the expert's estimation of the pecuniary loss and the total amount of the award represents inflation of the award for federal income taxes, *ante*, at 496–498, this is pure surmise. The jury was instructed that it could compensate for factors on which experts could not place a precise dollar value, and it is "entirely possible" that these, instead, were the basis of the award.

In any event, it has long been settled that the giving of cautionary instructions is governed by state law when an FELA action is brought in state court. "[Q]uestions of procedure and evidence [are] to be determined according to the law of the forum [in cases arising under the FELA]." *Chesapeake & Ohio R. Co.* v. *Kelly*, 241 U. S. 485, 491 (1916). This Court, to be sure, has asserted federal control over a number of incidents of state trial practice that might appear to be procedural, and has done so out of concern, apparently, for protecting the rights of FELA plaintiffs. See, *e. g.*, *Brown* v. *Western R. of Alabama*, 338 U. S. 294 (1949) (a State cannot apply, in an FELA case, its usual rule that pleadings are construed against the pleader); *Dice* v. *Akron, C. & Y. R. Co.*,

342 U. S. 359 (1952) (FELA plaintiff is entitled to a jury trial in state court notwithstanding a contrary state rule); C. Wright, Law of Federal Courts 195–196 (3d ed. 1976); Hill, Substance and Procedure in State FELA Actions—The Converse of the Erie Problem?, 17 Ohio St. L. J. 384 (1956). I agree, of course, that state rules that interfere with federal policy are to be rejected, even if they might be characterized as "procedural." See, e. g., Note, State Enforcement of Federally Created Rights, 73 Harv. L. Rev. 1551, 1560–1561 (1960). See generally Note, Procedural Protection for Federal Rights in State Courts, 30 U. Cin. L. Rev. 184 (1961). I cannot conclude, however, that a purely cautionary instruction to the jury not to misbehave implicates any federal interest. This issue truly can be characterized as one of the "ordinary incidents of state procedure," *Dickinson* v. *Stiles,* 246 U. S. 631, 633 (1918), which should be governed by state law.

Since the law of Illinois, where this case arose, is that it is not error to refuse to instruct the jury as to the nontaxability of the award, *Raines* v. *New York Central R. Co.,* 51 Ill. 2d 428, 430, 283 N. E. 2d 230, 232, cert. denied, 409 U. S. 983 (1972), and since I believe the trial court correctly excluded evidence of the prospective tax liability of the deceased victim, I would affirm the judgment of the Appellate Court of Illinois.