Salvatore ROSELLI, Plaintiff,

v.

HELLENIC LINES, LTD., Defendant.

No. 78 CIV. 5667 (CBM).

United States District Court,
S. D. New York.

Oct. 16, 1980.

Zock, Petrie, Reid & Curtin by Alexander Hulten, New York City, for plaintiff.

Zimmerman & Zimmerman by Martin Lassoff, New York City, for defendant.

## MEMORANDUM OPINION

MOTLEY, District Judge.

This case involves a suit pursuant to the Longshoremen's and Harbor Workers' Compensation Act for damages resulting from an injury sustained by plaintiff while unloading a vessel owned by defendant. On August 18, 1980, this court filed a memorandum opinion disposing of all issues in this case except the amount of damages. That determination was held in abeyance pending submission by the parties of evidence on the amount which should be deducted from plaintiff's future lost wages to reflect future income taxes which would have been paid on those wages. *See Norfolk & Western Railway v. Liepelt*, 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed. 689 (1980) (*Liepelt*). That evidence has now been submitted and forms part of the basis for the calculations described below.

**4**

■ In determining the amount of damages, this court must consider the nature and extent of the injuries received, the wages lost, medical expenses, and the plaintiff's pain and suffering. Damages are compensatory in nature, and must be awarded in accordance with the amount of loss plaintiff has suffered as a result of defendant's negligence. The total award, as described below, will not be reduced because plaintiff has not sought new employment. Plaintiff speaks virtually no English, has only a third grade education, and has been permanently disabled. His failure to seek new employment should not limit his recovery.

■ Plaintiff's medical expenses have been stipulated to be $3,884.63. Plaintiff's past wages lost total $41,434.00, exclusive of fringe benefits. Plaintiff is not entitled to compensation for fringe benefit payments since he would not have received them if he had continued working. It appears that the fringe benefit payments are made directly to retirement trust funds and are not received by longshoremen directly. Plaintiff's future wages lost are found to be $253,094.40. This figure assumes a future work expectancy of 11.7 years[1] and an annual salary of $21,632, as established by the

testimony of plaintiff's expert witness, an economist named Conrad Berenson. Damages for pain and suffering already endured by plaintiff are found to be $50,000. The court concludes that the plaintiff should be awarded $6,000 per year for future pain and suffering. Utilizing a life expectancy of approximately 21 years subsequent to the award, future pain and suffering works out to be $126,000.

■ Since the pain and suffering damages awarded in this action are not subject to federal income taxes, I.R.C. § 104(a)(2), while plaintiff's wages would be, the damages awarded for lost wages must be corrected to yield a net, after-tax amount. *See Liepelt, supra.*[2] Based on the evidence submitted by the parties after trial, this court concludes that the proper effective tax rate to be applied to the lost wages portion of the award is 13%.[3] Thus, the figure representing past wages lost is reduced to $36,047.58, and the figure for future lost wages is reduced to $220,192.13.

■ The portions of the award representing future lost wages and future pain and suffering must also be corrected to reflect present value, i. e., a figure which takes into account the earning power of the lump sum now awarded. Expert testimony at

---

1. This figure, as well as the life expectancy figure used in connection with calculating future pain and suffering were obtained from the "Future Damage Calculator" prepared by the Lawyers and Judges Publishing Company. The "Calculator" in turn obtains its figures from the *Monthly Labor Review*, published by the United States Department of Labor and *Vital Statistics of the United States*, published by the United States Department of Health, Education and Welfare.

2. Despite the court's request that post-trial submissions required in light of *Liepelt* be confined to future income taxes, defendant's counsel also argued that the *Liepelt* rationale be extended to correct the amounts which would have been withheld from future wages in connection with Social Security. Certainly *Liepelt* does not decide this question. The decision is explicitly limited to future income taxes. 444 U.S. 491, 494, 100 S.Ct. 756, 758, 62 L.Ed. 692, 694. Moreover, the plaintiff properly points out in response that his inability to work will result in diminished Social Security payments when he reaches 65 since he will not contribute any more money to the Social Security pro-

gram. Thus, any diminution of an award to account for Social Security taxes would have to be balanced against the amount by which plaintiff's Social Security benefits will decrease because his working life has ended prematurely. Defendant's papers do not even address this question. Given the evidence and arguments presented, this court sees no reason to extend the *Liepelt* decision in the fashion defendant has requested.

3. The court has tried to extrapolate in a reasonable fashion from the plaintiff's prior tax history and expert testimony concerning his probable future economic condition. This calculation is necessarily speculative because:

there are many variables that may affect the amount of a wage earners future income tax liability. The law may change, his family may increase or decrease in size, his spouse's earnings may affect his tax bracket, and extra income or unforeseen deductions may become available. *Liepelt*, 444 U.S. at 494, 100 S.Ct. at 758, 62 L.Ed. at 694.

trial suggested that an appropriate discount rate would be 8%. However, the plaintiff's education and literacy levels suggest that the diversified investment program needed to obtain an 8% return while allowing for some of the principal sum to be used for current expenses is, at best, improbable in this case. This skepticism leads the court to adopt a 6% discount rate to compensate for the earning power of the damages awarded. *See Chesapeake & Ohio v. Kelly*, 241 U.S. 485, 489, 36 S.Ct. 630, 631, 60 L.Ed. 1117 (1916). Accordingly, future lost wages are reduced to $153,837.19, and future pain and suffering is reduced to $70,584.00.

■ Adding the various corrected components of the award together yields a total award of $310,468.77. As this court stated in its previous memorandum opinion of August 18, 1980, the plaintiff's contributory negligence accounted for 75% of his injuries. Thus the total figure just given must be reduced by 75%, which yields a final award figure of $77,617.19. Defendant shall pay to plaintiff $77,617.19 less any amount already paid toward plaintiff's medical expenses.