**Marcy McKOWN–KATY and Peter Katy, Plaintiffs–Appellants and Cross–Appellees,**

v.

**REGO COMPANY, Defendant–Appellee and Cross–Appellant.**

**FARMERS INSURANCE EXCHANGE, Plaintiff–Appellant,**

v.

**REGO COMPANY, Defendant–Appellee.**

Nos. 85CA1499, 85CA1577.

Colorado Court of Appeals, Div. III.

Feb. 2, 1989.

Rehearing Denied March 9, 1989.

Certiorari Granted July 24, 1989.

Rothgerber, Appel, Powers & Johnson, Charles Goldberg, Denver, for plaintiffs-appellants and cross-appellees.

Cordova, DeMoulin, Harris & Mellon, P.C., Donald E. Cordova and John S.L. Sackett, Denver, for defendant-appellee and cross-appellant.

Anderson, Campbell & Laugeson, P.C., Richard W. Laugesen, Denver, for plaintiff-appellant.

STERNBERG, Judge.

This action involves claims for personal injury and property damage brought by the individual plaintiffs, Marcy McKown–Katy and Peter Katy, as well as a subrogation claim by Farmers Insurance Exchange. McKown–Katy and Farmers appeal, and the defendant Rego Company cross-appeals, judgments entered on a jury verdict. We reverse in part and remand for a new trial.

This case arises out of a motor home explosion and fire that occurred on September 3, 1982. Propane gas fumes leaked from two tanks attached to the motor home, enveloping the home in gas fumes, which exploded and resulted in a flash fire.

The motor home was owned by Harry and Carolyn Parsons, and was insured by Farmers Insurance Exchange. Marcy McKown–Katy and Peter Katy were occupants of the motor home. McKown–Katy was severely burned, and both she and Peter Katy suffered lost property. Pursuant to the policy and the requirements of the Automobile Accident Reparations Act, Farmers paid personal injury protection (PIP) benefits to both plaintiffs.

The Parsons sued for their damages and that case was tried prior to the subject litigation. There were some six defendants named in that action. It resulted in a determination that the Parsons were not at fault in the accident and established the comparative fault of the other defendants. The comparative fault of the Rego Company was found to be 17%.

Based on the judgment entered on the verdict in the Parsons' suit, the plaintiffs in this action moved for summary judgment on the issue of liability against the defendants who had also been defendants in the Parsons' case. The motion was granted, and thereafter, the plaintiffs settled with four of the defendants for approximately $1,200,000. Those defendants were thereupon dismissed from this action, and, after another individual was dismissed at the start of trial, Rego remained as the sole defendant.

In response to Rego's motion to join Farmers as an involuntary plaintiff, Farmers filed a complaint claiming to be a partial subrogee of the individual plaintiffs' claims against Rego for the amount of $58,700 paid under the automobile liability policy as PIP benefits.

The case proceeded to trial before a jury on the issue of damages. The jury returned a verdict for slightly over $1,000,000 for McKown–Katy's personal injuries, plus a small award to both individual plaintiffs for their property damage. The trial court deducted from the verdict the amounts received by the individual plaintiffs in settlement, and, because the settlement amount exceeded the jury verdict, the court entered judgment in favor of Rego. This appeal and cross-appeal followed.

## I.

Plaintiffs contend that the trial court erred in instructing the jury that damages awarded would not be subject to income taxes. We agree.

 Pursuant to Rego's request, the trial court instructed the jury as follows: "You should make no attempt to adjust the amount of damages which you award for the effect of income taxes, as the amount awarded will not be subject to income taxes."

In defending the instruction, Rego relies on *Norfolk & Western R.R. v. Liepelt,* 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980). *Liepelt* involved a FELA action, and we consider its holding to be limited to such cases. Questions concerning the measure of damages in a FELA action are federal in character even if the action is brought in the state court. This, on the other hand, is a state cause of action tried in the state court and wholly lacking in any federal concern. *See Tennis v. Motor Corp.,* 625 S.W.2d 218 (Mo.App.1981). Therefore, because this case is brought under Colorado law, state law applies to the question whether such instruction was proper.

 In actions to recover damages for personal injury or wrongful death, the majority rule is that the giving of an instruction on the nontaxability of damages awards is improper. *See, e.g., Klawonn v. Mitchell,* 105 Ill.2d 450, 475 N.E.2d 857 (1985). The rationale for this rule is that instructing the jury on income taxes interjects an extraneous consideration into the case and can only serve to mislead and confuse the jury. *See Ford v. Board of County Commissioners,* 677 P.2d 358 (Colo.App.1983).

No Colorado decision has held that an instruction, such as the one given here, constitutes error. However, there are cases that hold the converse: the refusal of the trial court to give such an instruction does not constitute reversible error. *Ford v. Board of County Commissioners, supra; Davis v. Fortino & Jackson Chevrolet Co.,* 32 Colo.App. 222, 510 P.2d 1376 (1973).

While Congress has not articulated its reasons for not taxing the injured party, we do not believe that it intended to confer a benefit on a tortfeasor. Whether plaintiffs have to pay tax on the award is a matter that concerns only them and the government and Rego has no interest in the issue. *Good Samaritan Hospital Ass'n v. Saylor,* 495 So.2d 782 (Fla.Dist.Ct. App.1986). The plaintiffs are the intended beneficiaries of the nontaxability of compensatory damages, not Rego.

The jury having been properly instructed on the measure of damages, it was no more appropriate to include specific reference to the issue of taxes than to innumerable similar extraneous factors that may affect the ultimate amount received by plaintiffs. Any instruction dealing with income tax liability is likely to give rise to more problems than it would solve as such an instruction introduces collateral matters into the damages issue. *See Hansen v. Johns Mansville Products Corp.,* 734 F.2d 1036 (5th Cir.1984).

Also, it is reasonably debatable whether the nontaxability instruction was an accurate statement of the law. Rego cites 26 U.S.C. § 104(a) (1985) as authority for the position that damages received in a personal injury action are excluded from McKown–Katy's gross income that forms the basis of her federal tax obligation. However, that statutory section provides that the portion of a personal injury award allocable to past medical expenses paid, deducted, and resulting in a tax benefit to a taxpayer is to be included in taxable gross income. Therefore, simply to instruct the jury that a personal injury award is not taxable is misleading.

Further, in light of the complexity and changing nature of the tax laws, the jury would be unable, without considerable speculation, to assess the effect of taxation upon its verdict. *Polster v. Griff's of America, Inc.,* 32 Colo.App. 264, 514 P.2d 80, *rev'd on other grounds,* 184 Colo. 418, 520 P.2d 745 (1974). Therefore, we adopt the majority view that it is reversible error to give such an instruction, and a new trial is required.

## II.

■ Among the contentions that are likely to arise on retrial, plaintiffs assert that the trial court erred in excluding expert testimony as to the heat of the fire. We agree.

In an offer of proof, plaintiffs informed the court that an expert witness would testify that the temperature range at which propane burns is between 1600 and 3500 degrees Fahrenheit and that McKown–Katy was exposed to the flames for a minimum of two to three seconds.

The trial court excluded the testimony on the basis that such evidence relates more to the issue of liability than damages. However, as explained by the treating physician, the heat of the fire and time exposed is a factor in assessing the amount of required treatment. Because of McKown–Katy's injuries, one of the required treatments was a procedure that was described by McKown–Katy's treating nurse as "very, very, painful." In view of this, the expert testimony as to the heat of the fire and time exposed was directly related to determining McKown–Katy's pain and suffering as a result of the accident.

In addition, we note that this testimony was the only evidence presented as to the heat of the fire; therefore, there was no threat of a needless presentation of cumulative evidence. *See* CRE 403.

■ Plaintiffs also assert that the trial court erred in not admitting into evidence the audio portion of a video tape of medical treatment which McKown–Katy underwent for her burn injuries. Again, we agree.

During her hospitalization McKown–Katy underwent on a daily basis the medical treatment which the nurse had noted as being extremely painful. The trial court permitted the jury to view an eleven-minute video tape of this treatment, but ordered that the audio portion be turned off.

CRE 403 was designed to permit trial courts the discretion of excluding relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. However, here, the sole issue presented to the jury was the amount of McKown–Katy's damages. Liability was established in a prior proceeding; thus, the usual concern that such evidence might affect the juror's determination of fault was absent. The video tape portrays the reality of McKown–Katy's pain and suffering. Upon review of this tape, we do not find the audio portion of the video tape to be unfairly prejudicial.

While we conclude the exclusion of this evidence by the trial court, by itself, would not be reversible error, at retrial, the expert's testimony on the heat of the fire and the audio portion of the video tape should not be kept from the jury.

## III.

■ Plaintiffs contend that the trial court erred in deducting the settlement amounts from the jury award. We disagree.

To determine the amount of the judgment, the trial court deducted the amount McKown–Katy received from settlement with other codefendants, $1,204,928, from the jury award, $1,040,100, thereby reducing plaintiffs' damage award to zero. The trial court did so in accordance with the Uniform Contribution Among Tortfeasor's Act, Colo.Sess.Laws 1977, ch. 195, § 13–50.5–105 at 810, that was in effect at the time. *See Greenemeier v. Spencer,* 719 P.2d 710 (Colo.1986).

The pertinent provision of § 13–50.5–105 in effect at the time McKown–Katy's action was commenced provides:

"(1) When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:

"(a) It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide; but, it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and

"(b) It discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor."

However, following the Supreme Court's decision in *Kussman v. City & County of Denver*, 706 P.2d 776 (Colo.1985), the General Assembly revised the statute to provide that a release or covenant not to sue:

"does not discharge any of the other tortfeasors from liability for their several pro rata shares of liability for the injury, death, damage, or loss unless its terms so provide; but it reduces the aggregated claim against the others to the extent of any degree or percentage of fault or negligence attributable by the finder of fact, pursuant to section 13–21–111(2) or (3) or section 13–21–111.5, to the tortfeasor to whom the release or covenant is given...."

Section 13–50.5–105(1)(a), C.R.S. (1988 Repl.Vol. 6A).

Plaintiffs argue that the ruling in *Kussman* and subsequent amendment to the Act dictate a reduction of the verdict only to the extent of Rego's proportionate share of damages. Here, Rego's proportionate share was found to be 17%. Therefore, after reducing the verdict by the proportionate shares of settling tortfeasors, Rego would still be liable for 17% of the verdict.

However, in *Kussman* the supreme court held that the defendants were not liable in tort for the same injury as required under § 13–50.5–105(1) and, as a result, the Contribution Act did not apply. Here, the defendants are liable in tort for the same injury. Therefore, the holding in *Kussman* is distinguishable and does not apply to the situation in this case.

The amendment to § 13–50.5–105 was approved by the General Assembly in May 1986. Unless a contrary legislative intent is clearly manifest, a statute is presumed prospective in its operation. Section 2–4–202, C.R.S. (1980 Repl.Vol. 1B). *See Kirby of Southeast Denver, Inc. v. Industrial Commission*, 732 P.2d 1232 (Colo.App. 1986). The General Assembly specified that the effect of the amendment applied only to civil actions commenced on or after July 1, 1986.

Therefore, because plaintiffs' cause of action was commenced prior to the effective date of the amendment, and because the statute in effect at the time was clear and unambiguous, the deduction of the settlement amounts from the verdict reducing plaintiffs' award to zero was proper.

## IV.

■ Finally, plaintiffs claim that the trial court erred in deducting the settlement amounts from the jury verdicts prior to adding interest to the damage award. We disagree.

In deducting the settlement amounts before adding statutory interest, the trial court relied on *Martinez v. Jesik*, 703 P.2d 638 (Colo.App.1985). There, the court held that by voluntarily settling with one tortfeasor, plaintiffs gave up their right to interest against that tortfeasor.

The rule in *Martinez* provides:

"Plaintiffs, by voluntarily settling and relinquishing their claim against one of the co-tortfeasors, gave up their right to interest on the amount in exchange for the certainty of settlement."

Plaintiffs and other codefendants settled their claims for damages and interest on those damages prior to trial. Now, plaintiffs are asking for pre-judgment interest on the settlement amounts. Under such circumstances, the trial court properly followed the rule of *Martinez* so as to comply with the pertinent statute and avoid a double award of interest. *See* § 13–21–101 and § 13–50.5–105(1)(a), C.R.S. (1988 Repl. Vol. 6A).

## V.

■ In its cross-appeal, Farmers asserts that the trial court erred in ruling that it could not enforce against Rego its subrogation rights for PIP benefits paid to plaintiffs. We disagree.

■ The general rule is that, on paying a loss, an insurer is subrogated to the insured's right of action against the tortfeasor. However, there is no automatic right of subrogation, but existence of the right depends on the facts of each case. *See* 6A J. Appleman, *Insurance Law & Practice* § 4051 (1972).

The trust agreement entered into by Farmers, McKown–Katy, and Katy effectively negated any subrogation rights as-

serted by Farmers against Rego for reimbursement paid to plaintiffs.

Subrogation is intended to prevent the insured from recovering twice for one injury as would be the case if McKown–Katy and Katy were allowed to recover from both Farmers and Rego. *See Marquez v. Prudential Property & Casualty Insurance Co.*, 620 P.2d 29 (Colo.1980).

However, even if plaintiffs had obtained a jury award from Rego exceeding the settlement amounts, Farmers would still have to look to them for reimbursements because Farmers had assigned to them its right to litigate its claims.

## VI.

On cross-appeal, Rego claims that the trial court erred in finding its motion to dismiss frivolous, and consequently, awarding plaintiffs attorney fees. We disagree.

As grounds for the motion to dismiss, Rego asserted that the complaint failed to plead facts sufficient to show in personam jurisdiction over it. On plaintiffs' request, the trial court found Rego's motion to be frivolous, and therefore, under C.R.C.P. 121 § 1–15, awarded plaintiffs attorney fees of $3,128.50.

A claim or defense is frivolous for purposes of assessing attorney fees if the proponent can present no rational argument based on the evidence or law in support of that claim or defense. *Western United Realty, Inc. v. Isaacs*, 679 P.2d 1063 (Colo.1984).

Here, in concluding that the motion was frivolous, the trial court ruled that plaintiffs had alleged facts subjecting Rego, as a non-resident defendant, to in personam jurisdiction as required by the long-arm statute. Rego, however, claims it is at least arguable that those allegations were insufficient. Such determination is a matter within the discretion of the trial court, and we perceive no abuse of that discretion here. *See Schoonover v. Hedlund Abstract Co.*, 727 P.2d 408 (Colo.App.1986).

## VII.

Rego also contends on cross-appeal that the trial court erred in awarding costs to plaintiff. We disagree.

Plaintiffs were successful in obtaining a summary judgment against Rego on the issue of liability, and the trial court awarded costs to plaintiffs of $6,381.39.

C.R.C.P. 54(d) provides: "Except when express provisions thereof is made either in a statute or in these rules, costs shall be allowed as of course to the prevailing party unless the courts otherwise direct...." Under this rule, the trial court acted properly in awarding plaintiffs their costs for establishing liability.

Rego's final contention that the trial court erred in dismissing its cross-claim against the settling codefendants is without merit.

The judgment is affirmed as to the award of attorney fees and costs to plaintiffs, and the remainder of the judgment for damages is reversed. The cause is remanded for a new trial, with damages awarded in such trial to be treated in accordance with this opinion.

NEY and MARQUEZ, JJ., concur.