421 So.2d 385 (1982)
James A. COOPER
v.
KEYES OFFSHORE, INC., Midland Insurance Company and William Yager.
No. 15125.
Court of Appeal of Louisiana, First Circuit.
October 12, 1982.
*387 David W. Robinson, Baton Rouge, for plaintiff-appellee.
William E. Wright, David B. Lawton, New Orleans, for defendants-appellants.
Before EDWARDS, WATKINS and SHORTESS, JJ.
EDWARDS, Judge.
Plaintiff, James A. Cooper, brought this action under the Jones Act, 46 U.S.C.A. § 688, and general maritime law for injuries which he sustained while working as a roughneck aboard the Keyes Rig No. 150, a jack-up oil drilling rig located off the shore of Louisiana in the Gulf of Mexico. Named as defendants were Keyes Offshore, Inc., owner of the rig and plaintiff's employer; Midland Insurance Company, Keyes' liability insurer; and William Yager, employed by Keyes as a tool pusher on the rig.
The district court rendered judgment in favor of plaintiff and against Keyes and Midland in the sum of $183,529.00. Plaintiff's suit against Yager was dismissed. Keyes and Midland have appealed, challenging the factual findings made by the trial court.
Our review of the record reveals the following facts. Cooper was hired as a roughneck by Keyes in March of 1980. Prior to that time, Cooper had worked as a roughneck for a previous employer for a period of approximately two months. The injuries which plaintiff sustained were the result of two accidents which occurred while he was working for Keyes.
On May 2, 1980, Cooper sustained an injury while he was transferring drill pipe from the drill hole to an inclined ramp, located next to what is known as the "V-door." This pipe was in sections thirty feet long and three and one-half inches in diameter. Plaintiff's job was to attach a chain connected to an air hoist to the pipe so that it could be lifted from the "mousehole," a hole located two to three feet from the drill hole. Once the chain was attached, the pipe would be raised by the air hoist operator. Once out of the mousehole, the pipe would swing over toward the ramp located at the V-door. Plaintiff would then push the pipe out so that it was suspended over the ramp and would guide it as the air hoist operator lowered the pipe. On the day of the accident, Cooper had positioned a section of pipe over the ramp and told the air hoist operator to lower it. According to Cooper, the operator lowered the pipe faster than usual. The end of the pipe struck the raised edge of the ramp and bounced to the right, jamming Cooper's hand against a stanchion located at the edge of the ramp. When the accident occurred, plaintiff jerked his body in such a manner as to cause injury to his neck and shoulder.
The second accident occurred on June 27, 1980, while Cooper was engaged in a procedure known as "pulling slips." A slip is a metal, wedge-shaped device which is inserted into the drill hole in order to hold the drill pipe in position when adding or removing pipe. The slip consists of three separate sections joined by two hinges so that it may be wrapped around the pipe and wedged into the drill hole. Each section of the slip has a handle on it. The slip being removed at the time of the accident was estimated to weigh from sixty to ninety pounds. As plaintiff and another crew member were removing the slip from the drill hole, plaintiff lost his balance and fell. Plaintiff landed on his back, aggravating the injury sustained in the previous accident.
On appeal, defendants challenged the factual findings made by the trial court. Defendants contend that the court erred in finding that Keyes' negligence caused either of plaintiff's accidents. Additionally, defendants maintain that it was error for the trial court to find plaintiff free from comparative negligence in the two accidents.
Since defendants' appeal is directed toward the factual findings of the trial court, it is appropriate to set forth the standard of review in a case such as this. Appellate review of a case brought under the Jones Act and general maritime law is governed by Rule 52(a) of the Federal Rules *388 of Civil Procedure.[1]Kratzer v. Capital Marine Supply, Inc., 645 F.2d 477 (5th Cir. 1981).
Although Louisiana courts are constitutionally authorized to review both the law and the facts in civil cases, they may not under federal law and jurisprudence disturb the findings of the trial judge on the merits in such cases unless the findings of the trial judge are clearly erroneous. Melancon v. I.M.C. Drilling Mud, 282 So.2d 532 (La.App. 1st Cir.1973); Kratzer v. Capital Marine Supply, Inc., supra. In McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20 (1954), the United States Supreme Court gave the following explanation of the clear error rule:
"A finding is clearly erroneous when `although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " 348 U.S. at 20, 75 S.Ct. at 8.
A district court's findings regarding negligence are treated as findings of fact reviewable under the "clearly erroneous" standard. Tucker v. Calmar Steamship Corporation, 457 F.2d 440 (4th Cir.1972).
Appellants urge that the clearly erroneous standard has no application in the instant case because the trial judge adopted the findings of fact and conclusions of law submitted by counsel for the plaintiff, except for quantum. Appellants contend that in light of this action by the trial judge this court is entitled to make an independent evaluation of the facts. See, e.g., Miller v. Smith, 391 So.2d 1263 (La.App. 1st Cir. 1980), aff'd 402 So.2d 688 (La.1981).
As discussed above, the scope of review in this case is governed by federal law and jurisprudence. A number of cases in which the trial judge adopted findings submitted by prevailing counsel hold that nonetheless these findings are considered the trial judge's findings and entitled to the weight mandated by the clearly erroneous rule. See Schwerman Trucking Co. v. Gartland Steamship Co., 496 F.2d 466 (7th Cir.1974), and the cases cited therein. In United States v. El Paso Natural Gas Co., 376 U.S. 651, 84 S.Ct. 1044, 12 L.Ed.2d 12 (1964), the United States Supreme Court stated, with regard to such finding:
"Those findings, though not the product of the workings of the district judge's mind, are formally his; they are not to be rejected out-of-hand, and they will stand if supported by evidence." 376 U.S. at 656, 84 S.Ct. at 1047.
Thus, since the scope of review in the instant case is the same as that applied in federal appellate courts, it follows that the preparation of proposed findings of fact and conclusions of law by participating counsel, and the adoption thereof by the trial judge, are entirely acceptable.[2]
Having disposed of the procedural issues involved, we now turn our attention to the substantive issues. The Jones Act grants to any seaman a cause of action for personal injury caused by his employer.[3] *389 Plaintiff's status as a seaman within the meaning of the Jones Act and his employment by Keyes are not in dispute.
Under the Jones Act, an employer's negligence need not be the sole proximate cause of an injury to result in liability, but may merely be a contributing cause of the accident. Reyes v. Vantage Steamship Co., Inc., 558 F.2d 238 (5th Cir.1977); Spinks v. Chevron Oil Co., 507 F.2d 216 (5th Cir.1975). In Sanford Bros. Boats, Inc. v. Vidrine, 412 F.2d 958 (5th Cir.1969), the court declared:
"The question of proximate cause in an action under the Jones Act turns on whether the actions of the defendant contributed to the injury even in the slightest degree. Proximate cause is not destroyed merely because the plaintiff may also have contributed to his own injury."

THE FIRST ACCIDENT
This accident occurred when plaintiff's right hand was caught between the section of pipe he was guiding out over the ramp and a stanchion. Plaintiff testified that when he told the hoist operator to "slack off," the operator lowered the pipe too fast. The pipe struck the ramp hard and bounced to the right, trapping plaintiff's hand.
The evidence with regard to the pipe's capability of moving fast was in conflict. Plaintiff testified that the pipe dropped quite suddenly. He had operated the hoist before and testified that the speed of the hoist could be varied depending upon how the control handle was pressed and that the hoist could be "free-spooled," that is, the rate of descent controlled solely by use of the brake. Frank Godeaux, a tool pusher employed by Keyes, testified that the hoist had only one speed. Defendant's occupational safety expert examined the hoist nearly one year after the accident and timed its rate of movement at thirty feet per minute. He testified that the hoist moved at only one speed and could not be free-spooled.
The trial court was presented with conflicting evidence relative to the possibility of the hoist moving at a faster than normal rate. The court accepted plaintiff's testimony and concluded that the accident was caused by the pipe falling at a rapid rate of speed. We are unable to say that the trial court's acceptance of plaintiff's testimony was clearly erroneous.

THE SECOND ACCIDENT
Plaintiff's second accident occurred when he fell while he and another crewman were "pulling" a slip, that is removing it from the drill hole. Defendants note that plaintiff failed to prove that there was any mud or other substance which caused him to slip. They contend that there was no proof of any negligence on the part of Keyes which caused plaintiff's fall.
Stanley Day, plaintiff's witness who was accepted by the court as an expert in the field of occupational safety, testified that the three-piece slip was designed to be handled by three men. According to Day, each man should hold one handle. He testified that it is an awkward procedure for two men to lift the three-piece slip and that the slip is likely to become unbalanced in the process. Additionally, Day testified with regard to a training manual published by the International Association of Drilling Contractors, of which Keyes is a member. A portion of that manual, dealing with the procedure for handling slips when removing pipe from the drill hole, was introduced into evidence. According to the training manual, three men are required to pull slips during such an operation. Furthermore, William Yager, who worked as a tool pusher in plaintiff's crew, testified that ordinarily *390 three men were assigned to pull slips when pipe is being removed, unless one of the men is not available.
Defendants' safety expert, A.J. Scardino, testified that the three-handled slips could be handled by two men if each were to place one hand on the third handle. He did not believe that it was awkward or unsafe for two men to handle a slip. Scardino acknowledged that three men are occasionally assigned to pull slips, but maintained that the introduction of the third man is intended to prevent fatigue when frequent slip pulling is required.
Clearly, the trial court was presented with conflicting opinions of the two experts. The court chose to accept the opinion of plaintiff's expert and concluded that Keyes was negligent in requiring two men to do a job which requires three men. On the evidence contained in the record, we are unable to say that the trial court's finding was clearly wrong.[4] Insufficient manpower assigned to a task may constitute negligence. Carleno v. Marine Transport Lines, Inc., 209 F.Supp. 859 (E.D.Va. 1962).

COMPARATIVE NEGLIGENCE
In a Jones Act action, contributory negligence does not operate as a bar to recovery, but results in a reduction of plaintiff's award commensurate with his proportion of fault. Tolar v. Kinsman Marine Transit Co., 618 F.2d 1193 (6th Cir.1980); Scott v. Fluor, 501 F.2d 983 (5th Cir.1974). In Spinks v. Chevron Oil Co., supra, a comparison between the duties of the employer and employee in a Jones Act case was made:
"The duty owed by an employer to a seaman is so broad that it encompasses the duty to provide a safe place to work. By comparison, the seaman's duty to protect himself (the ground for any countervailing legal interest serving to exculpate the employer) is slight. His duty is to do the work assigned, not to find the safest method of work." 507 F.2d at 223 (citations omitted).
If the first accident occurred in the manner related by plaintiff, which the trial court found that it did, there was no showing of any negligence on plaintiff's part. Defendants argue that Cooper's placement of the pipe to the far right of the ramp caused his injury. The record and the trial court findings do not support that assertion. The trial court found that this accident was caused by the failure of the hoist to operate properly or by the hoist operator's negligence in letting the pipe drop too quickly. In either event, Keyes would be responsible. Plaintiff could not be expected to anticipate that the pipe would drop faster than normal. The position of the pipe had nothing to do with the fact that it dropped too quickly, struck the ramp and bounced over to smash plaintiff's hand. The entire ramp is designed to accommodate drill pipe. No matter where plaintiff would have located it, the pipe would still have reacted as it did if lowered too rapidly.
Defendants contend that if the pulling of the slips by two persons was awkward, plaintiff could have overcome this by putting his free hand on the third handle. However, as noted in the excerpt from Spinks v. Chevron Oil Co., supra, the seaman's duty is to do the work assigned, not to find the safest method of work. Furthermore, we note that plaintiff's expert testified that if the two men used four hands on the three handles, it would increase the awkwardness of the procedure and make it difficult for them to bend their knees, increasing the strain on their backs. Consequently, we are not convinced that the four-handed method of pulling slips *391 would be any less awkward than the two-handed method. Cooper was not at fault in using one hand to lift the slip.
We find no error in the trial court's finding that plaintiff was free from any fault in the two accidents. The evidence in the record reveals no negligence on the part of Cooper.

DECREE
For the foregoing reasons, the judgment of the district court is affirmed. All costs of these proceedings, both trial and appellate, are to be paid by defendants-appellants.
AFFIRMED.
NOTES
[1] Fed.R.Civ.P. 52(a) provides, in pertinent part, as follows:

"(a) Effect. In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58; and in granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action. Requests for findings are not necessary for purposes of review. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."
[2] We note that at the beginning of trial, the presiding judge requested that counsel for each party submit proposed written judgments with facts, law and reasons in lieu of post-trial briefs. Only counsel for plaintiff complied with this request. Counsel for the defendants chose, instead, to submit a post-trial memorandum of law.
[3] The Jones Act, 46 U.S.C.A. § 688, provides as follows:

"Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located."
[4] Appellants maintain that their expert's opinion is entitled to greater weight because of his superior education and experience. The record does indicate that defendants' expert has more formal education in the field of occupational safety than does plaintiff's. However, we are unable to say that it was error for the trial court to rely upon the opinion of plaintiff's expert, based as it was upon his forty years of work experience in the field of industrial and occupational safety and buttressed by the guidelines in the training manual of the International Association of Drilling Contractors.