WILLIAMS, Judge.
This is a personal injury action by plaintiff Raymond J. Mart arising out of injuries he sustained in a rear end automobile collision on October 19, 1981. Named as defendants were James E. Hill (the owner and operator of the other vehicle), Intra-coastal Truck Lines, Inc. (the lessor of Hill’s vehicle and Hill’s employer), and North River Insurance Company (the insurer of Intracoastal Truck Lines, Inc.). An Intervention was filed by National Union Fire Insurance Company, the compensation insurer of plantiff’s employer, Boson Diesel, Inc., seeking reimbursement of compensation and medical benefits paid to plaintiff in connection with the accident.
This case was tried before a commissioner. The commissioner recommended that judgment be rendered in favor of plaintiff against defendants in the amount of $10,-000.00 in general damages plus $8,760.00 in lost wages for a lumbosacral strain sustained by plaintiff, the award subject to a 50% reduction representing the degree of plaintiff's fault in the accident. The trial judge affirmed the commissioner’s recommendations.
Plaintiff and Intervénor bring this appeal taking exception to the commissioner's findings assessing plaintiffs degree of fault at 50%, the adequacy of damages awarded plaintiff attributable to the accident and the failure of the commissioner to compensate plaintiff for “traumatic neurosis” he suffered as a result of the accident. After a thorough review of the record, we find no manifest error in the conclusions and recommendations of the commissioner adopted by the trial judge.
We affirm.
FACTS
On October 19, 1981, Mr. Mart, while stopped in his 1980 Toyota truck on the left shoulder (emergency lane) on the westbound lane of I — 10 at the Oaklawn overpass, was struck in the rear by a tractor-trailer vehicle owned and operated by defendant James E. Hill and leased to Intra-coastal Truck Lines, Inc. The evidence shows that prior to the accident Mart had reached the top of the overpass when he noticed that the traffic had stopped and begun to stack-up because of a previous accident at the bottom of the overpass. Mr. Mart would have been able to stop his vehicle with no difficulty behind a vehicle immediately in front of him in the left hand traffic lane. Because he had noticed a large tractor-trailer behind him and was concerned about its ability to stop Mart drove onto the paved shoulder adjacent to the left hand traffic lane. Once on the paved shoulder, he stopped his vehicle with his front bumper aligned with the rear bumper of another stopped vehicle in the left hand traffic lane. He further testified that he elected to stop, rather than proceed along the shoulder, because he thought it was “illegal” to drive on the paved shoulder.
In the meantime, Hill, who was also travelling in the left lane, reached the top of the overpass and observed the accident at the bottom of the overpass. Sensing that he would be unable to bring his tractor-trailer to a halt before reaching the line *1151 of cars backed-up in front of him, Hill drove on to the shoulder when, without warning, Mart simultaneously moved from the left hand traffic lane on to the paved shoulder and stopped his vehicle. This resulted in Hill’s colliding with the rear of Mart’s vehicle.
Mr. Mart was taken to the emergency room of East Jefferson General Hospital on the night of the accident. He was released the same evening with no positive findings of injury. Mr. Mart was then examined the next day by Dr. Wilmot Plo-ger, an orthopedic surgeon. Dr. Ploger diagnosed a lumbosacral strain and observed minor muscle spasms. He treated Mart on five occasions and released him with no restrictions on January 18, 1982, indicating Mart was fit to return to his previous employment.
The record shows that after Mart’s discharge, he was able to return to and perform his work as a diesel mechanic. According to tax returns, his earnings were consistent with those prior to the accident, which included an average 23 hours per week of overtime based on a 40 hour week.
Between January and July, 1982, while he was still employed, Mart visited his family physician, Dr. Ed Mikal, for treatment of hypertension. There is nothing to indicate that he complained of serious back pain on these visits.
On July 16, 1982, Mart saw another orthopedist, Dr. William Pusateri. Mart described pain radiating into the left hip and buttocks, and at that time, Dr. Pusateri detected a lumbar strain and instructed Mart to commence physical therapy. Because of continuing complaints, Mart was admitted to Mercy Hospital for diagnostic tests in. August, 1982. A lumbar myelo-gram, EMG, and nerve condition studies were negative. Based on this, Dr. Pusateri prescribed anti-inflammatory drugs and analgesics for pain.
Mart continued to complain of pain, but since Dr. Pusateri’s tests proved negative and he could not detect objective signs of injury, he was referred to Dr. Bert Bratton, a neurosurgeon. Dr. Bratton performed microsurgery on November 12, 1982, and examined Mart’s disc spaces, vertebral column, tested for nerve root damage or impingement and checked for bulging of the discs at either L4-L5 or L5-S1. The only objective finding that he diagnosed was nerve route irritation from hypertrophy of the ligament (a thickening of the ligament.) Dr. Bratton stated that he removed a piece of the ligament and felt that he had cured Mart’s problems.
Although Mart’s condition did appear to improve in the immediate post-operative period, Mart continued to complain. Because Dr. Bratton was unable to find anything objectively wrong with Mart, he referred him to Dr. Donald Richardson, a neurosurgeon and the physician in charge of the Hotel Dieu Pain Clinic. Dr. Richardson found no objective signs of injury and determined that Mart had a pre-existing emotional problem describing it as a “failed back syndrome with hysterical symptoms.” The psychiatrist and the psychotherapist at the Pain Clinic determined that Mart was a “passive-dependent” type of personality and testified that he was using his exaggerated complaints to obtain sympathy. Mart remained at the Pain Clinic for six weeks and demonstrated marked physical and psychological improvement. In fact on April 13, 1983, Dr. Richardson testified that Mart “admitted that he could return to work.” Dr. Richardson noted, however, that as the time of Mart’s discharge neared, Mart’s complaints of pain became elevated.
After his discharge, Mart continued to complain and then consulted Dr. Carlos Pi-sarello, a neurosurgeon, on October 17, 1983. Dr. Pisarello observed that the patient was suffering mild paraspinal contractions, with complaints of low-back pain. Dr. Pisarello prescribed a back brace to see if stabilization of the spine would remedy Mart’s complaints. He then referred Mart to Dr. Truman Kerr, an orthopedic surgeon, for an examination and opinion.
Drs. Pisarello and Kerr determined that surgery was necessary. During surgery, they found that discs L4-5 and L5-S1 were *1152 prolapsed and degenerated. A lumbar fusion was performed. Dr. Kerr testified that Mart now has a twenty five percent (25%) functional disability of the body as a whole.
COMPARATIVE NEGLIGENCE
The commissioner determined that Mart was 50 percent at fault. The following is an excerpt from his reasons for judgment:
“The evidence established that both drivers acted identically, that is, they moved from the left hand lane onto the paved shoulder of the highway. The cause of the accident was the combined negligence of both drivers. Plaintiffs movement from the left hand lane onto the shoulder was a factual and legal cause of the accident. Likewise his decision to stop on the shoulder (was a legal cause of the accident). Had the plaintiff stayed in the left hand paved lane, the accident would not have happened. Had the plaintiff continued on the paved shoulder past the accident at the bottom of the overpass, the accident would not have happened. At the scene of the accident, there are four lanes of travel and a paved lefthand shoulder. The plaintiff knew that the tractor-trailer was following him and assumed either that the tractor-trailer was going to have difficulty stopping or that Hill would not attempt to avoid the accident by moving to the shoulder. Nevertheless, he chose to move onto the shoulder and then chose to stop for no apparent reason.
“The plaintiffs testimony that he stopped on the paved shoulder because he thought it was “illegal” to drive on the shoulder is not credible. Plaintiffs movement from the left hand lane onto the shoulder was unreasonable in view of his knowledge that the tractor-trailer was immediately following his vehicle. Additionally, plaintiff had not attempted to check in his rearview or side view mirror the position of the tractor-trailer after plaintiff began his ascent to the top of the overpass. Plaintiff was therefore negligent in changing lanes under these circumstances.
“Likewise, defendant driver Hill was at fault because he was not able to stop his tractor-trailer in time to avoid the accident. His negligence was also a proximate cause of the accident. He admitted that if ne did not move from the left hand lane onto the shoulder, he would have struck the vehicle or vehicles ahead of him. This case is very analogous to Guidry v. Cagle Brothers Circle Pump Service, Inc., 453 So.2d 1280 (La.App. 3rd Cir.1984), in which the plaintiffs vehicle stopped for no apparent reason and was struck in the rear by the defendant’s truck. As such, the degree of fault attributable to the plaintiff, Raymond J. Mart, is assessed at 50 percent and the degree of fault attributable to the defendant driver, James Hill, is also assessed at 50 percent. Both acted identically and both driver’s actions were factual and legal causes of the accident.”
We find that the trial court committed no manifest error in finding Mart negligent in light of the fact that his conduct fell below the standard expected of a reasonable man under the circumstances and that the very same conduct created the emergency situation in which Mart found himself. The degree of fault attributable to Mart is a question of fact which must be determined by a trial judge just as any other fact. Great weight should be given to the factual determinations of the trier of fact and such findings should be reversed only if manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring, 283 So.2d 716 (La.1973). We do not find that the trial court was manifestly erroneous.
GENERAL DAMAGES
By this assignment of error, Mart argues that the trial court erred in its conclusion that he sustained no permanent disability as a result of the accident on October 19, 1981. We note that the credibility of the plaintiff is especially significant when a physician must relate a medical condition to an accident when it is the plaintiff who provides the physician with a history of his symptoms. Wilcox v. Park Amusements, Inc., 468 So.2d 704 (La.App. 4th Cir.1985). The trial court is free to *1153 evaluate expert opinions and is not bound by any of them in making this determination. Wright v. Ocean Drilling & Exploration Co., 444 So.2d 129 (La.App. 4th Cir.1983).
The following is the commissioner’s findings:
“Plaintiff failed to prove any relationship between the accident of October, 1981 and the surgery of November, 1982 or the surgery of November, 1983. Likewise, plaintiff failed to prove that he suffered any permanent disability as a result of the accident of October, 1981. The physicians who testified, admitted that they could only relate Mr. Mart’s extended treatment and continued back complaints to the accident of October, 1981 by the plaintiff’s history. Simply because someone undergoes surgery two years after an accident does not mean that that surgery or consequent disability relates to that accident. The plaintiff must prove by a preponderance of the evidence that an accident caused or contributed to medical treatment and disability. In this case, the plaintiff has failed to meet his burden that the subsequent surgeries and disability related to the accident of October, 1981. The court must analyze the credibility of the plaintiff’s testimony and his attempt to relate his continued complaints to the accident of October, 1981. As such, having heard the plaintiff and having had the opportunity to observe him, the court does not give credence to Mr. Mart’s testimony. The employment history of the plaintiff after his discharge by Dr. Ploger to full duty and his income tax returns indicate that Mr. Mart was able to return to his job in January, 1982 and that he did perform his duties through August, 1982. In spite of Mr. Mart’s attempt to explain that he was on “light duty” until July, 1982, the court finds from the income tax records and his employment records, that Mr. Mart was, as a matter of fact, engaged in his normal occupation and earned the same amount of money after the accident as before. The plaintiff's testimony that he was pain-free before the accident but suffered back pain long after his discharge by Dr. Ploger in January, 1982 and that his continued complaints related to the October, 1981 accident is not supported by the facts. As such, it is not believable. Plaintiff has therefore failed to prove by credible evidence that as a proximate result of this accident, he suffered any disabling back condition that required surgery. There was no evidence presented that Mr. Mart ever attempted to return to any type of work after August, 1982.
“The plaintiff has proven that he suffered a lumbosacral strain of approximately three months duration. The court is therefore of the opinion that an award of $10,000 for pain and suffering (subject to a 50 percent reduction) would properly and fairly compensate him for his injury. Additionally, plaintiff is entitled to recover any medical expenses not paid by the compensation insurer from the date of the accident to the date of discharge by Dr. Ploger. Plaintiff is also entitled to recover his lost wages from the date of the accident to his release to work by the treating physician, Dr. Ploger.”
Mart attempted to relate ruptured discs diagnosed in October 1983, to an accident that occurred on October 19, 1981, largely on the basis of a history of symptoms provided by him to his physicians. The evidence shows that Mart has a severely arthritic back, that Dr. Bratton was unable to detect ruptured or bulging discs in November, 1982 (over one year after the accident), that Dr. Richardson was unable to explain Mart’s condition in March, 1983, and that Mart has performed manual labor consisting of the “lifting of engines and doing a lot of driving at work.” The trial court found that Mart had failed to establish a causal relationship between the accident and the necessity of his undergoing a lumbar fusion. When there is evidence before the trier of fact which, upon its evaluation of credibility, furnishes a reasonable factual basis for the trial court’s finding, the appellate court will not disturb *1154 the finding absent manifest error. Canter v. Koehring, 283 So.2d 716 (La.1973).
TRAUMATIC NEUROSIS
By this assignment of error, Mart maintains that the trial judge erred by failing to recognize in his judgment damages for “traumatic neurosis” Mart claims to have suffered or continues to suffer from attributable to the accident on October 19, 1981. The commissioner did not specifically address this particular element in awarding general damages in favor of Mart, though we do not find he evaded the issue. Although such an injury is compensable if proven to be due to the fault of the defendant, it is a factual question left to the trier of fact. We find no manifest error in the decision.
A great deal of medical testimony was adduced at the trial centering upon whether Mart’s complaints were physical or psychosomatic in nature and whether his injuries, if any, could be connected with the October 19, 1981 accident. As indicated in the aforementioned reasons for judgment, the triers of fact specifically determined that any physical injuries Mart suffered in the accident were compensable up to the time he was released from the care of Dr. Ploger on January 18, 1982 (without any restrictions), approximately three months after the accident. Without specifically stating in the judgment, though certainly consistent with his findings of fact and conclusions, the commissioner implicity found that any psychological medical injury (presumably pain and suffering) Mart suffered prior to his release from Dr. Ploger was included in the general damage award, while any complaints thereafter were not causally related to the October 19, 1981 accident. We find that any psychological damages Mart may have incurred prior to his release from Dr. Ploger were adequately provided for in the general damage award and the trial judge did not commit manifest error in denying damages subsequent to his release.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal to be borne by appellants.
AFFIRMED.