## CIRCUIT COURT OF FAIRFAX COUNTY

Xavier Vazquez, Adm'r

v.

Josefino Ceballos

March 31, 1995

Case No. (Law) 125763

BY JUDGE ARTHUR B. VIEREGG, JR.

On March 21, 1995, this Court heard oral argument with regard to Defendant Dr. Ceballos' Motion for a New Trial. At the conclusion of the hearing, this Court denied Dr. Ceballos' motion to the extent it was based on my denial of Dr. Ceballos' mistrial motion. The remaining grounds for Dr. Ceballos' Motion, dealing with the qualification of an expert witness and the denial of a jury instruction, were taken under advisement. Each ground will be dealt with in turn.

### I. *Background*

In this wrongful death case, Plaintiff Xavier Vazquez, as administrator for his deceased wife's estate, contends that Dr. Ceballos' malpractice caused her death. At the inception of his treatment of Mrs. Vazquez, Dr. Ceballos was assigned to the emergency room of the Potomac Hospital. His medical specialties are emergency room medicine, surgery, and family medicine.

The evidence presented at trial demonstrated that Dr. Ceballos' treatment of Mrs. Vazquez commenced at approximately 11:00 p.m. on December 30, 1989, and continued until early in the morning of December 31st, around 4:40 a.m., when she was admitted to the hospital by another physician undertaking her care. The evidence further demonstrated that Dr. Ceballos initially reached a tentative diagnosis that Mrs. Vazquez was suffering from an intestinal infection; that approximately six hours later,

he changed that diagnosis to one of pneumonia; that due to a rare endocrine deficiency, Mrs. Vazquez' body may have been unable to mount a defense to her pneumonia; and that she died several days later. Finally, the evidence presented suggested that, had Dr. Ceballos accurately diagnosed Mrs. Vazquez' condition shortly after her arrival at the Potomac Hospital Emergency Room, she would have survived. After considering all of the evidence, the jury returned a verdict for the Plaintiff in the amount of $503,685.95, plus interest.

## II. *The Standard of Care Testimony of Dr. Donowitz*

At the trial, Dr. Gerald Donowitz, an internist and a specialist in the area of infectious disease, opined that Dr. Ceballos had violated the standard of care of a physician treating a patient for pneumonia.

Virginia Code § 8.01-581.20 governs standard of care testimony of expert witnesses in medical malpractice cases. It provides in pertinent part:

> A. In . . . any action against a physician . . . to recover damages alleged to have been caused by medical malpractice where the acts or omissions so complained of are alleged to have occurred in this Commonwealth, the standard of care by which the acts or omissions are to be judged shall be that degree of skill and diligence practiced by a reasonably prudent practitioner *in the field of practice or specialty* in this Commonwealth, and the testimony of an expert witness, otherwise qualified as to such standard of care shall be admitted . . . Any physician who is licensed to practice in Virginia shall be presumed to know the statewide standard of care in the specialty *or field* of medicine in which he is qualified and certified . . . A witness shall be qualified to testify as an expert on the standard of care if he demonstrates expert knowledge of the standards of the defendant's specialty and on what conduct conforms or fails to conform to those standards and if he has had active clinical experience in either the defendant's specialty or a related field of medicine within one year of the date of the alleged act or omission forming the basis of the action.

(Emphasis added.)

At trial, the issue of Dr. Donowitz' qualification to testify as a standard of care witness focused upon the requirements contained in the last sen-

tence of the statutory language quoted above. In particular, Dr. Ceballos contended then, and contends now in support of his Motion for a New Trial, that this Court erred in permitting Dr. Donowitz to testify because, in his view, Dr. Donowitz failed to demonstrate "expert knowledge of the standards of the defendant's specialty and of what conduct conforms or fails to conform to those standards . . . ." Va. Code § 8.01-581.20(A).

In evaluating Dr. Ceballos' contentions that Dr. Donowitz failed to demonstrate expert knowledge of an emergency room physician treating pneumonia, it is first necessary to review the credentials presented by Dr. Donowitz in support of the contention that he possesses the knowledge necessary to testify as an expert in this case.

Dr. Donowitz testified that he has practiced medicine continuously since graduating from the University of Pennsylvania School of Medicine in 1974 (Tr. 303); that he was licensed by the Commonwealth of Virginia as a physician (Tr. 305); that following his internship and residency in internal medicine at the University of Virginia from 1974 until 1977, he had become board certified in the area of internal medicine (Tr. 303-304); that in 1980, he had received a fellowship for post-doctoral training at the University of Virginia in the area of infectious diseases (Tr. 307); that in 1980, he had also become board certified in the specialty of infectious diseases (Tr. 304, 306). In addition, Dr. Donowitz testified that for much of his career, he served as a professor at the University of Virginia Medical School in Charlottesville, Virginia (Tr. 305-307); and that he has authored numerous published works, including many related to the treatment of pneumonia (Tr. 308-309). Furthermore, Dr. Donowitz testified that during the previous five years, he had treated AIDS patients with pneumonia at the University of Virginia Hospital Emergency Room (Tr. 333).

Based upon the foregoing testimony, this Court found that Dr. Donowitz demonstrated sufficient knowledge of the standard of care of an emergency room physician treating pneumonia. A principal basis for this Court's recognition of Dr. Donowitz was his persuasive testimony that the same standard of care governs the treatment of pneumonia by primary care physicians, irrespective of whether they are internists, general practitioners, family doctors, or emergency room doctors (Tr. 310-311; 319-321).

Although a physician may not *ipso facto* qualify as an expert merely by testifying he is an expert (*Noll v. Rahal*, 219 Va. 795 (1979)), in this case Dr. Donowitz presented credentials demonstrating that he was knowledgeable as to the standards of care of treating a pneumonia patient by a primary care physician and further demonstrating that those standards do

not differ between the primary care specialties. Furthermore, during *voir dire*, Dr. Ceballos' counsel did not demonstrate that different standards of care apply to an emergency room physician's treatment of a pneumonia patient as opposed to those which govern such a patient's treatment by an internist or other primary care physician.[1] This Court, therefore, concluded then, and it affirms now, that Dr. Donowitz' education and other credentials, coupled with his experience, were more than adequate to demonstrate his knowledge of the standard of care for the treatment of pneumonia by an emergency room physician such as Dr. Ceballos.

The requirements of Virginia Code § 8.01-581.20 governing standard of care testimony in a medical malpractice case are intended to insure that a physician's treatment of a patient will not be judged by the standards of a different specialty. See, *Ives v. Redford*, 219 Va. 795, 842 (1979). The admission of Dr. Donowitz' testimony did not subject Dr. Ceballos to such an unfair standard.

In its present form, moreover, Virginia Code § 8.01-581.20 recognizes that a physician is presumed to know the statewide standard of care of his "specialty or field." It is arguable that Dr. Donowitz' testimony also demonstrated that his "field" and the "field" of Dr. Ceballos were the same in that both involve the primary care of pneumonia patients. This is particularly the case since Dr. Donowitz testified that Dr. Ceballos' specialty of family medicine and his of internal medicine were essentially the same, and that both embraced the primary treatment of pneumonia patients (Tr. 320). Viewed in this way, Dr. Donowitz presumptively knew the standard of care, and that presumption was not thereafter seriously contested by Dr. Ceballos.

For the foregoing reasons, the Court concludes that it was proper to allow Dr. Donowitz to testify as an expert as to the standard of care governing Dr. Ceballos' treatment of Mrs. Vazquez.

### III. *Dr. Ceballos' Proffered Tax Instruction*

Dr. Ceballos also contends that a new trial should have been granted on account of this Court's denial of his proffered instruction that any award in

---

[1] Indeed, such testimony was never elicited on behalf of Dr. Ceballos in the course of the case.

the case would not be taxed.[2] Relying upon the United States Supreme Court decision in *Norfolk & Western Ry. Co. v. Liepelt*, 444 U.S. 490 (1980), he argues that in the absence of such an instruction, the jury was improperly invited to speculate whether an award would be taxed and to inflate the award to compensate for its putative taxation.

Although in *Liepelt* the United States Supreme Court may have opted to require such an instruction in certain federal cases, the Supreme Court of Virginia has not seen fit to make such an election.[3] Concluding that Virginia's decision is grounded upon sound reasons, this Court does not choose to follow the *Liepelt* decision.

For the foregoing reasons, Dr. Ceballos' Motion for a New Trial is denied.

---

[2] Dr. Ceballos also contends in his Motion for New Trial that this Court erred in refusing other instructions tendered by him. However, those instructions were neither addressed on brief or in oral argument. This Court will accordingly not address those instructions.

[3] The Supreme Court's decision in *Liepelt* was specifically limited to federal law because the case arose under the Federal Employers' Liability Act. "Whether it was error to refuse [the instruction that the award will not be subject to any income taxes] . . . is a matter governed by federal law." 444 U.S. at 492-493. Accordingly, *Liepelt* does not govern cases tried in state courts under state law.