# CIRCUIT COURT OF WISE COUNTY

Estate of Brandon McFalls

v.

Dorothy V. Vincent et al.

September 4, 1997

Case No. L94-249

BY JUDGE FORD C. QUILLEN

The matter before the Court is a motion in limine by counsel for the defendants, Dr. Dorothy Vincent (a pediatrician) and St. Mary's Hospital, to disqualify Dr. Monte Phillips (a surgeon) as an expert witness in the above-styled case. In the Court's deliberations, the Court relied upon the discovery depositions of Dr. Phillips, memoranda by plaintiff and defendants, and oral arguments. The issue is whether Dr. Phillips has sufficient knowledge, skill, training, and experience to make him competent to qualify as an expert in the subject matter of this case and "demonstrates expert knowledge of the standards of the defendant's specialty."

## I. *Testimony as to Dr. Dorothy Vincent*

### A. *Facts of the Case as Stated by Dr. Phillips*

The decedent was a small child who was presented to the treating doctor with pneumonia and admitted to St. Mary's Hospital on June 9, 1992. The child had a strep throat prior to admission and had been on penicillin. The penicillin had been discontinued, and the child was given erythromycin, which was discontinued on the second day of hospitalization. Later the child was restarted on oral erythromycin and was given it until the child's demise. The notes show that this seven year old child was admitted with pulmonary atresia (absent a right pulmonary artery), pneumonia with pulmonary

infiltrate, demonstrable on a chest x-ray, complicated by previous infectious mononucleosis, with enlargement of the liver and spleen.

Dr. Phillips also states that it was known during the course of hospitalization that the drug erythromycin was being given to the mother to administer to the child. On one occasion, it was described as being mixed with ice cream so the child would take it. It was known during hospitalization that the child did not want to take it, and he vomited on every day of his hospitalization except on June 12, which was the day before the child died. On page 26 of Dr. Phillips' deposition, Dr. Phillips describes the last vomiting episode as fatal.

Regarding the alleged malpractice, Dr. Phillips testified as to Dr. Vincent's management of the child while in the hospital, stating a number of acts were done which did not adhere to the treating doctor's standard of care. On page 28, line 16, of Dr. Phillips' testimony, he stated the doctor deviated with the standard of care by (1) failing to use erythromycin intravenously and at an increased level, (2) not culturing the sputum, (3) not having an appreciation of how critically ill the child was, and (4) continuation of medication in a form which was causing irritation resulting in repeated vomiting. In addition, Dr. Phillips noted that (6) there was no adjunct antibiotic used, and (7) the cause of the pneumonia was never diagnosed.

## B. *Dr. Phillips' Experience and Training*

Dr. Phillips has had extensive training and experience in the thoracic and pulmonary areas which are involved in this particular case, and he is a board certified surgeon. After receiving his medical degree from the University of Tennessee, he completed a straight surgery internship at the University of Alabama, and then he did a residency in general surgery, with a fellowship in cardiology. He served the U.S. Army in Vietnam where he performed surgery at a field army hospital. He then did three years of cardiac/thoracic surgery at the University of Alabama. He started practicing general surgery in 1971 in Kingsport, Tennessee. While completing his residency, Dr. Phillips treated and operated on pediatric patients and had consultations with pediatricians. He worked with small and large babies, did lung surgery on children and infants, even when he came to Kingsport and started practicing. He had experience doing the following procedures on patients' lungs: pneumonectomies, scarification procedures, re-expansions of pneumothorax, bronchoscopy, removal of foreign bodies in infants and children. He also had treated a child with the condition of absent pulmonary artery. Although Dr.

Phillips' practice was in Tennessee, his patients were approximately 45 to 50% from Virginia, particularly southwest Virginia.

The Court finds that Dr. Phillips is qualified in knowledge, experience, skill, and training to testify as to the appropriate standard of care in regard to the subject matter of this case.

## C. *Demonstrating Expertise in the Defendant Doctor's Specialty*

The requirements of Virginia Code § 8.01-581.20 governing standard of care testimony in a medical malpractice case are intended to insure that a physician's treatment of a patient will not be judged by the standards of a different specialty. See *Ives v. Redford*, 219 Va. 838 (1979).

> This ... also prevents an expert, such as a specialist in a given area, from *imposing his or her own standards of care upon persons with less specialized or different experience.*

See *Johnson v. Capital Area Permanente Group*, 32 Va. Cir. 145, 147 (1993) (emphasis added).

From the depositions, it appears that the alleged deficiencies found by Dr. Phillips (such as failure to ensure the child was getting the proper dosage of medicine, give the erythromycin intravenously because the child was regurgitating the medicine, give additional antibiotics because of the child's serious condition, culture the sputum, etc.) would be discernible to a pediatrician, family practitioner, internist, surgeon, or any specialist.

In *Vazquez, Adm'r v. Ceballos*, 36 Va. Cir. 181 (1995), an internist was qualified to testify in regard to the treatment of pneumonia when the defendant doctor was an emergency room doctor, a different specialty. The court held in that case that the treatment of pneumonia does not differ between a primary care specialist such as internist or emergency room doctor. This Court would hold that this same logic would apply in this case in that Dr. Phillips, even though a surgeon, would be qualified to testify as to the child's condition and the appropriate standard of care.

It is clear that the standard for treating this infectious disease of pneumonia would be the same whether performed by a family physician or a surgeon. The difference in specialties is further discussed in the *Vazquez* case in which the court states:

> Furthermore, during voir dire, Dr. Ceballos' [*defendant's*] counsel did not demonstrate that different standards of care apply to an emergency

room physician's treatment of a pneumonia patient as opposed to those which govern such a patient's treatment by an internist or other primary care physician. This Court, therefore, concluded then, and it affirms now, that Dr. Donowitz' education and other credentials, coupled with his experience, were more than adequate to demonstrate his knowledge of the standard of care for the treatment of pneumonia by an emergency room physician such as Dr. Ceballos.

36 Va. Cir. at 184 (emphasis added).

There is no evidence in Dr. Phillips' discovery deposition that his standard of treatment for pneumonia would differ from Dr. Vincent's, and, of course, at the trial, this question could be asked in voir dire to ensure that the treatment would be the same regardless of specialty.

It appears to the Court that the management of the child at the hospital was for pneumonia with special complications and that Dr. Phillips showed knowledge of the conditions of the child and the treatments would be within the general realm of Dr. Phillips' knowledge and training, as well as pediatricians, family physicians, or other specialists. The same standard would apply to Dr. Phillips or other specialists. It is noted that the decedent in the *Vazquez* case had a rare endocrine deficiency, just as there were further complications in the instant case.

In the *Johnson* case, concerning the uniform treatment of pneumonia by doctors regardless of specialty, the court states as follows:

Certain physical disorders cross the lines of various disciplines within the medical profession. For instance, a patient with a back problem might be treated by practitioners in a number of fields: chiropractic, internal medicine, neurology, neurosurgery or orthopedic surgery. In such a case, each individual practitioner might be subject to a different standard of care based on the treatment prescribed and the practice in their field. Other disorders, *however, are so prevalent that any doctor in active practice can properly diagnose the ailment, if not necessarily treat it. Pneumonia is one such ailment.*

32 Va. Cir. at 148 (emphasis added).

After reviewing the opinions of the expert witness, the Court finds that these opinions are based upon the standards of the defendant doctor's specialty.

For the above reasons, the Court finds Dr. Phillips qualified to testify in the case against Dr. Vincent.

## II. *Testimony as to St. Mary's Hospital*

The plaintiff must prove that nurses of St. Mary's Hospital failed to adhere to the standard of care applicable to nurses. The standard of care for the treatment of the child which the Court found applicable to Dr. Vincent and to multi-specialists is not applicable to nurses. The Court further finds that there is not sufficient evidence by Dr. Phillips' deposition to show that he is qualified to testify to the standard of care applicable to the nurses. Also, a review of Dr. Phillips' deposition does not readily show any act of malpractice on the part of the nurses at St. Mary's Hospital. For these reasons, the Court unless presented with further evidence would exclude Dr. Phillips from testifying against the hospital.